L. Douglas Young
vs.                    } P. A. No. 1312.
Everett F. Young, Ex'r.

March 31, 1933.

CAPOTOSTO, J. The testatrix's husband and his brother, Arthur L. Young, were partners in equal shares in a paper box business, known as Young Brothers, until the death of testatrix's husband on December 12, 1920. At his death, the deceased partner left his interest in the partnership business in equal shares to his two sons, Everett F. Young and L. Douglas Young, subject to certain charges in favor of his widow. The business continued as a partnership with Arthur L. Young owning a one-half interest and the two brothers one-quarter interest each until 1924, when it was incorporated. The stock of the Young Bros. Co. was held by the same three persons and in the same proportion. The business was carried on without interruption with Everett as general manager, Douglas as sales manager, and both with their uncle, Arthur L. Young, as a board of directors. About this same time, the testa-

trix, who apparently had never concerned herself with business affairs, gave her son Everett a general power of attorney.

In 1925, Douglas Young started as a side line, on his own account and with the knowledge of the others, the business of gold tooling, so-called, which consisted of applying ornamentation in gold on paper boxes. As this venture prospered, the roots of future discord took hold.

In 1927, Mrs. Annie F. Young, a sister of the testatrix and a positive character, married Arthur L. Young.

During the summer of 1929 open dissension broke out over Douglas's gold tooling business. In December of that same year this business was taken away from Douglas and made a part of the Young Bros. Co.'s activities. Serious complications of various kinds now began to develop. As the months rolled by the situation became more and more involved and reached a climax on April 6, 1931. On this day, Douglas was discharged as sales manager and refused re-election to any office in the corporation. Mr. C. Leslie Cordery was elected in his stead to the board of directors.

On August 21, 1931, even though the testatrix knew in a general way of the disagreement between her only two children, Everett and Douglas, she personally consulted Mr. Arthur L. Johnson and executed a will by the terms of which both boys and their respective families were treated alike.

On December 28, 1931, suit was brought in the name of the mother against Douglas on a claim originating in the father's estate. Who really authorized or counselled this action, which tied up by attachment every available fund of Douglas, is more a matter of speculation than of established proof.

In the meanwhile, the testatrix had become affected with a throat ailment which rapidly grew worse and was finally diagnosed as cancer. She died May 6, 1932. The unfortunate woman practically starved to death.

On February 16, 1932, the very day that she was taken to a hospital, she signed a second will, drawn by Mr. Cordery and executed at her own home. How and under what conditions this paper was drawn and signed was the subject of many pages of testimony. There is one fact, however, which should not pass unobserved. It appears that both Mrs. Annie F. Young and Mr. Cordery had heard rumors that Douglas claimed that this will was procured by unfair and improper means. These reports apparently were disturbing, especially to Mrs. Annie F. Young. This will changes the will drawn by Mr. Johnson on August 21, 1931, by eliminating certain specific bequests and by giving Everett a decided preference over Douglas.

On March 22, 1932, the testatrix returned from the hospital as an incurable case and with a very short prognosis of life. She was growing weaker every day through lack of nutrition.

On April 19, 1932, another will was drawn by Mr. Cordery and signed by the testatrix at her house on Laura Street. This third instrument, which is the one in issue, in effect restated in different words the provisions of the alleged will of February 16, 1932. By its terms Everett was left the substance and Douglas was given the shell of a very modest estate. The basis for the provisions in this last instrument was a pencil memorandum claimed to have been made by Everett at the direction of his mother and admittedly given by him to Mr. Cordery. This memorandum has been lost.

The circumstances under which the instrument of April 19, 1932, was thought of, prepared and signed were the subject of a minute and liberal inquiry. The proponents maintain that it is the free expression of the settled

purpose of the testatrix. The contestants, on the other hand, claim that the instrument in question is not the will of the testatrix but rather represents the wishes of Mrs. Annie F. Young, or of Everett Young, or of both combined.

Two more facts may be material and, therefore, deserve mention. The first is that Arthur L. Young, husband of Mrs. Annie F. Young, although referred to in the testimony in a number of instances, did not appear as a witness nor was his non-appearance explained. The second is the testimony of Mr. Arthur Johnson in rebuttal to Mrs. Annie F. Young's claim that at no time had she advised the testatrix in regard to how she should treat her boys in her will. Mr. Johnson stated positively that when the testatrix came to his office to have him draw the will of August 21, 1931, she stated that her sister Annie had advised and urged her to make a difference in her will between her two sons. In spite of this, the testatrix instructed him to give the same share to both.

The case unfolds a series of business and family reactions of a bitter nature. To go into details would necessitate the writing of a brief, for incidents on both sides are open to different interpretations and comments. It is in effect a jig-saw puzzle of human frailties. The picture ultimately presented is one of contrasts, of indelicate strokes, with a nebulous setting and a dark background. The central figures are human beings tossed about on the waves of impulse, of unrestrained emotions, and of opportunity for immediate advantage. The greatest regret is to see persons of culture and refinement yielding to the more sordid instincts of life.

Open and veiled charges of conspiracy, bad faith, intrigue, the desire to dominate, jealousy, greed and what not were frequently made and as often denied. The record is full of evasions, distortions, recriminations, insinuations, innuendoes, explanations and exculpations. What the record does not and cannot reproduce is that index to sincerity or insincerity which is conveyed by the tone of voice, the stare of the eye, the flushing or blanching of the cheek, in short, the physical characteristics of a human being under examination.

The estate is small. The feeling is intense. It strikes the Court as a miniature civil war. I pray that the peaceful rest of a good mother has not been disturbed by the indiscreet conduct of those to whom she should have been sacred. A little more restraint, a disposition to compromise differences for the good name of the entire family, a sincere respect for the memory of one professed to be loved, would have avoided a good many heartaches and, more important still, would have prevented any bitterness in years to come. But, blinded by immediate and rather selfish consideration, the parties most intimately affected lost their bearings and chose to sail the uncharted seas of strife. Common sense was made to walk the plank of legal proceedings and submerged in a storm of bitter discord.

A conservative and intelligent jury listened attentively to the details of this family tragedy. It had the benefit of exhaustive arguments from highly respected counsel, both of whom seem to have been drafted for service by the respective sides at the zero hour. The benefit of their acknowledged ability was conveyed by them to the jury with the utmost frankness, without impassioned appeal or invectives, and with a sincerity of purpose that commanded strict attention and conscientious consideration.

The jury returned a verdict finding that the instrument in question was not, in fact, the last will and testament of the deceased. The proponents move for a new trial upon the ground

that the verdict is against the evidence and the weight thereof.

In view of the above considerations and after a careful review of the evidence, the Court feels that the verdict of the jury was a proper finding according to its reconstruction of the events under examination. The Court does not believe it rests within its province to disturb a jury's verdict which is reasonable and is supported by the weight of the credible evidence as it reasonably could be interpreted even though a different conclusion might be possible.

Motion for new trial denied.

For appellant: Comstock & Canning.

For appellee: John H. Slattery, C. Leslie Cordery.